Good morning. May it please the Court. We have here in this case the second bankruptcy case for the day for the Court's consideration. This is an appeal by permission from an interlocutory order that denied a Rule 12b-6 motion to dismiss. We believe that there are two independent grounds in which the District Court, or excuse me, the Bankruptcy Court erred. I'm obviously here to answer whatever questions the Court has on either one, but my intent was to focus my argument here this morning on the second ground, which relates to the proper statutory interpretation of 523A, excuse me, 8A.2 of the Bankruptcy Code. And I'd like to start the argument where I think any statutory interpretation argument should start, and that's with the text of the statute. And frankly, I think that's where the inquiry starts and where it should end. The operative language that's in dispute says that an obligation to repay funds received as an educational benefit, scholarship, or stipend is non-dischargeable in bankruptcy. And really the fundamental question to me is, is an obligation to repay funds received as an educational benefit sufficient to encompass a loan? And frankly, I just don't see the textual argument. Is a loan different than those items that you've just listed? Loans accrue interest, don't they? As an educational benefit, scholarship, or stipend accrue interest? That is, if you get a $10,000 scholarship, you have to pay back $10,000 plus interest? I think it depends, Your Honor, on the terms of the stipend or the scholarship. I think the scholarship and stipend language is obviously intended to cover sort of a conditional situation where somebody says, we'll pay for your education if upon graduation you go work in a low-income school, for example. And if you don't work in a low-income school, you've got to pay the amount back. The terms of that conditional scholarship may or may not include interest depending on the specific terms of the loan. So I don't think you can say categorically. What you're trying to collect on is a loan. That's not disputed, correct? I'm sorry? It's a loan, what you're trying to collect on? We are absolutely trying to collect on a loan. So why would the two I that were focused on, the one you just read, it doesn't use the word loan, but the preceding section, one I, does, and the following section, B, also uses loan? Yes, Your Honor, no question about it. And my argument on that is very simple, that an obligation to repay funds is broader than a loan and includes a loan. And in fact, if you apply the Noscator Socio-Canon of Construction, which the bankruptcy court relied on in a different way, I think that actually supports our position. Because what the Supreme Court has said in its application of the Noscator Canon is that you don't just pick out isolated parts of a statute and apply that canon. You apply that canon holistically to the entire statute. So the fact that the preceding section talks about loan, and the third section talks about loan, and the textual language here is, by common everyday usage, broad enough to cover a loan that the Noscator Canon actually supports our position. And when you balance that against the notion that from the very time 523A8 was first enacted, every time Congress has modified that or amended it, it has been for the specific purpose of expanding the non-dischargeability scope, not restricting it. Let me just ask a clarifying question. You filed a motion 12B6, right? And you've referred I think a number of times to the notion that Roman numeral II here is broad enough to cover a loan. I thought the predicate of your 12B6 was that a loan necessarily falls within the is an educational benefit. Is that not your premise? It is, Your Honor, but you get there through two steps. One is the first part of the statute, obligation to repay, and that is broad enough to cover a loan. And then you look to the rest, what kind of obligation to repay is covered, and it's an obligation to repay funds received as an educational benefit. And when you get a student loan that by the terms of the very notes here, there's no dispute about this, the McDaniels represented in their promissory notes that they were going to use this money exclusively for paying the cost of attendance at school. It's just a loan. It's just a loan. How can it be a benefit? A benefit, that to me connotes a whole different area of good things. The statute itself references loans separately from educational benefit, which would suggest that Congress viewed those as distinct items. Again, I come back to the plain language and to your point, Judge Briscoe, I think that a loan, if I get a loan to do something, it is a benefit to me, it is an advantage to me, which is a part of the common definition of benefit, and it is, it is. And if I have to pay it back, then it's within the scope of this statute. Is there any distinction between viewing it as funds received as an educational benefit as opposed to for education? It seems to me that, you know, naturally those are, those mean two different things. And this phrase uses as an educational benefit, when you combine that with scholarship and stipend, it gives it a connotation that does not suggest necessarily. And I think that's what we're talking about here. Under your view, it necessarily has to be an educational benefit, right? Yes, Your Honor, and I fully concede that the cases that have gone the other direction for me have drawn the distinction that Your Honor just drew between as and for. I respectfully submit though that that is not in this situation a distinction that matters. The appellees, for example, in their own brief concede that as and for sometimes can have the exact same connotation. And to argue here that it doesn't, they go into a lengthy grammatical discussion that requires somebody to understand the grammatical terms of anaphora, apposition, predicate-nominative, non-adjunctive. Well, why do you have to do that? Instead, you can back up and combine as with the two other things that it is associated with. And if you do that, as I was alluding to, it gives you a whole different connotation of what's going on here. And Your Honor, I respectfully don't read it that way because, for example, if you take the phrase that I'm going to loan you money to use for tuition and replace it with the phrase I'm going to loan you money to use as tuition, I respectfully submit that those things in essence mean exactly the same thing. And that is in essence what we have here. And that the distinction between as and for is simply not significant. I find it frankly difficult to believe that when the draftspeople of this provision, which was admittedly, everybody admits, was intended to broaden the scope of non-dischargeability, sat down and drew a distinction between as and for. I think we're going to assume that Congress in drafting knows English language and uses it precisely. I mean, that's what we're supposed to be doing. And I would not ordinarily use as if I meant to give somebody a loan for school. And so that doesn't necessarily follow at all, that they shouldn't. I'm not saying they have to be doing that. I'm not saying your argument is silly. I'm just saying that it doesn't necessarily follow that's right. I understand what Your Honor is saying. And I continue to come back to what, from my perspective, is the plain meaning of this statute. And I'm either going to convince the court of that or I'm not. And with that in mind, I just want to be clear. What's the strongest aspect of the text that leads you to believe that a loan necessarily is an educational benefit? So the strongest aspect is, if you look at what was being amended to get to this point, and this amendment that we're talking about was done in 2005. In the prior version, this same language, educational, or excuse me, obligation to repay funds received as an educational benefit, existed in the statute, but it was lumped in with a broader section that dealt with federally guaranteed loans. And in the 2005 amendment, Congress separated this language out into a standalone provision as part of an amendment that everybody concedes was designed to make private loans, and not just federally insured loans, non-dischargeable. So they used this language that I'm focusing on here. They pulled it out of a prior section where it was lumped in with federal loans and rendered it a standalone provision. And they did that specifically as pointed out, I think, in the Corbin case, to deal with the line of authority out there that we call the truck driver cases that had said that if it's a loan to a vocational school which is generally not federally insured and is generally not to a Title IV institution that we want to cover those loans. And by breaking it out into a standalone provision, I think that's what they did. And the contrary interpretation offered by the Bankruptcy Court and by my opponents actually creates an anomaly that would make no sense in that context, because under their interpretation, a private employer, for example, who gives a conditional scholarship or conditional stipend that then has to get repaid because the person didn't satisfy their conditions, that private employer gets protection. But a private lender who lends to a non-Title IV student at a vocational school doesn't get that protection. Why would Congress have intended to create a special carve-out for a private employer who is doing this for their own profit motives and without federal guarantees, without non-profit guarantees, but single out a private lender for disparate treatment? The lender's getting interest, and that private employer in that example you talked about is not. Well, the private employer may or may not be getting interest depending on the terms of their particular... They're getting a benefit. I'm not saying that in your hypothetical they couldn't be getting a benefit, but so is if I were to receive a fellowship or a scholarship that's conditioned upon my achieving a certain GPA or if I met whatever criteria they come up with that exemplifies the values of the donor for the scholarship, well, they're getting something, but they're not getting interest. No, I understand, but there is nothing here... The whole point, as we understand the change in 2005, was to broaden the scope of non-discrete charitability, to specifically include private loans, to specifically deal with these truck driver cases, and the only way it makes sense is to construe it to lenders as well as private employers, because granted the private employer doesn't get interest, but they're doing what they're doing for their own personal profit motive, not because they're some non-profit or not because they're pursuing some federally insured desire to promote the availability of funds for education. I understand that, but I guess what I was getting at is Congress is empowered to make policy choices, and they appear to, when they say scholarships and stipends, they seem to be making a policy choice to endorse, essentially, the situation of people who are pursuing certain broader, less tangible goals than interest. Understood, Your Honor, and that way of looking at it sort of begs the question and assumes the answer to whether benefit has to be construed consistent with stipend and scholarship, and obviously we disagree with that interpretation. Correct, and again, I come back to the NOSCOTOR canon, and the Supreme Court has been very clear about this, that first of all, a string of just three things is probably not, I think this is the Schindler case, is probably not enough to invoke the NOSCOTOR canon in the first place, and here we have three things, benefit, scholarship, and stipend, and then the Supreme Court goes on to say, in any event, you don't, if you have a statute like this with sort of three tiers, you don't apply the NOSCOTOR canon by just looking at one tier. You've got to look at it holistically and apply NOSCOTOR, if you're going to apply it at all, based on the entire structure of the statute. So if you do that, the entire structure of this statute is we have loans, benefits, stipends, scholarships, loans. So if we're going to say that a word has the meaning of the company that it keeps, which is what NOSCOTOR is, then educational benefit, there's a strong argument, does in fact include a loan. And I see that I'm about out of time. I'd like to reserve what little I have left for rebuttal. You may, thank you. Thank you, Your Honor. Good morning, Your Honors. As my opponent talked about, we're here primarily on two issues. It seems that the issue that I'd like to give a little bit more attention to also is the question of statutory interpretation. I'd like to point out a couple of things in response to my adversary's arguments. I think that in a couple places, he seemed to say that obligation to repay funds was the loan, and in other places, he said the educational benefit was the loan. Now, according to their brief, their argument is the obligation to repay funds is the loan, and the educational benefit describes the purpose of that loan. That is, the educational benefit isn't the loan in his estimation. It is the educational advantage that is derived from the loan, which is the obligation to repay funds received. And I think that's actually a critical difference because it sort of demonstrates again, what does Congress mean by the word benefit? Benefit has two distinct meanings. It can mean either an advantage or profit gained from something or this type of conditional grant. And I don't think it can mean both in this instance. And I think the candidate of Noscatorra Silkis shows that what Congress was talking about, as the bankruptcy court held, was some kind of grant. That's what a scholarship is. That's what a stipend is.  You're saying that in your view, and I think this was the bankruptcy court's view, a loan can never be an educational benefit? I believe that's correct. Why could you not have a situation where, let's say, a student who scored a 4.0, and somebody decides as a benefit to them, Yes. Scoring a 4.0, they give him a zero interest loan. Okay. Why is that not an educational benefit? Why isn't that like a scholarship that you received for your academic excellence, educational activity? Your Honor, I think it's an important question. I think, again, it turns on this definition of benefit. Or is the question, you're going to get this advantage because you got good grades, or is it you're going to get a conditional payment made by your employer or the state? You are going to get an advantage, like a scholarship, the student graduates 4.0 valedictorian from high school. Yes. One person gets a scholarship to name your school. The other person gets a free loan, a loan of money, essentially zero interest, just pay it back. Yes, Your Honor. What's the difference between the two? I still believe, Your Honor, that a benefit is distinct from a loan. A veteran's benefit, a health insurance benefit, what they're talking about is a sum of money that is distinct from a loan. You haven't answered the question. What's the difference? I mean, you're getting a zero interest loan. It is a loan, and you're getting it for your academic achievement. Somebody else gets a scholarship for their academic achievement. Yes, Your Honor. I'm just asking, what's the principled difference between the two? I think the difference between the two is, again, the type of financial transaction that has arisen. A benefit is not a loan in that context. A benefit, I mean, in the sense that if I get a health insurance benefit from my company, they don't call that a loan for health insurance expenses. I mean, I guess you could structure it that way somehow, but the term benefit has a different connotation than a loan. A scholarship and a zero interest loan, the difference between two is what? Is that one is expected to be repaid and one is not. One is expected to be repaid if you achieve, if you don't achieve a certain level of academic excellence, whatever, they can have conditions on scholarships, can't they? Of course, and that's a conditional grant, as the Bankruptcy Court talked about. But I still think, and so, I mean, I can understand if you're getting it, sometimes these things sort of blur and they sort of mix together. That is what I'm getting at, and that's why I'm saying, why would one necessarily have to stake out the position that categorically an educational benefit cannot be a loan? Can't you win if, in fact, a loan is not necessarily covered by this statute? Because their position is, per se, a loan is covered by this statute for purposes of 12b-6. Can't you win just by saying that's not right? I suppose you could, Your Honor, but I guess what I would direct the court to is section A8-A1, where Congress juxtaposes the term loan and educational benefit overpayment. I think that's a pretty good indication that Congress is talking about two very different things there. Now, in the context of A1, an educational benefit overpayment is the following situation. If I have a veteran's benefit from joining the military and I'm getting $10,000 a year to go to school, the $10,000 is the educational benefit provided by the Department of Defense. Sometimes what happens is the Department of Defense sends a $12,000 check as an administrative error. That's an educational benefit overpayment. And I think that what Congress—and there's case law about this. The court's talking about, wait a second. You know, we need to capture all of these different types of federal financing for higher education. Sometimes it takes the form of a loan. Sometimes it takes the form of a benefit. Sometimes it takes the form of a scholarship. And I think that when Congress is choosing those words, it's doing so in response to the various programs the government has initiated. I think Your Honor's point is excellent. Perhaps it's true. Sometimes this could be a loan. And I guess—and you can certainly design a situation where in common parlance you might say, well, that's a benefit of your academic achievement. I still think in that context, though, Your Honor, when the money from the inception of the debt is to be repaid, we call that a loan. When it's a conditional grant and there's not an expectation of repayment absent some kind of breach of contractual obligation, we don't call that a loan. We call that a conditional grant or we call that a benefit in this context. And it might be helpful to look at the facts that occurred here. Yes, Your Honor. Yeah. I mean, we have a loan— Yes, Your Honor. —with interest— That's correct. —to be repaid. And I think, Your Honor, the other thing to note is in my opponent's discussion about the amendment in 2005, well, Congress did separate what was originally 523A8 into two subsections, but they also added Section B, which was to, except from discharge, a qualified education loan. And to read it the way that Navient reads it, that was entirely superfluous because all private education loans got total full immunity as an educational benefit. And so Congress added this section about qualified loans that doesn't add anything to the statute, which I think is not a rational way to interpret what was going on when Congress amended the statute in 2005. Have other courts ruled on this issue? Yes, Your Honor. As the briefs pointed out, between 2000—well, I think there's three sections or three phases of this case law. From 1990 to 2005, what is often called the truck-driving cases, every court came out and said, no, an obligation to repay funds received as an educational benefit doesn't encompass loans. And so if your loan isn't federally insured, if your loan isn't federally guaranteed, if your loan wasn't funded by a nonprofit, you don't get protection under this clause of the statute. Then in 2005, Congress amended 523A8. They added subsection B, which excepted from discharge a qualified education loan that gave limited protection to private lenders, and they separated A1A and 2 with a semicolon. Nothing really happened from 2005 to 2008 or 2009. Then from 2008 or 2009 until 2014, all the courts that came out did say, no, an obligation to repay funds received as an educational benefit covers all loans. And courts, they sort of just built on each other. They said—and oftentimes the question was, well, wait a second, this loan is not a qualified education loan because it wasn't made to a Title IV school. And the court said, so it doesn't fit within Section B, but ah-ha, it's an obligation to repay funds received as an educational benefit. And to me, but those cases always just didn't make sense. Well, if it doesn't fit within B and it doesn't fit within A1, but it just fits within A2 by virtue of all loans fit within A2, that didn't make a lot of sense to me. In 2015, the first court to sort of grapple with the problem of supersalage, a case called Nunez out of the District of Oregon, said, yes, there are all these cases that say that. It fundamentally doesn't make any sense, though, why Congress would do that. After Nunez came the Campbell case, which went into great detail about nos catora socis, the legislative history. And after that, every court that has examined both positions, both my position and the appellant's position, have come out in favor of the narrow view. There has been, I believe, one case in the last year that also adopted the broad interpretation. That was without analyzing both sections. So between Dufresne, Nunez, Kashikar, Campbell, Golden, Hohmiden, McDaniel, Meyer, a number of cases that are studied in the brief, since 2015, we believe that are more, spend more time analyzing this. They universally have held that the narrow view is the proper interpretation here. And oftentimes, beginning with the simple presumption that, look, exceptions to discharge are construed narrowly, and they're construed in favor of the debtor to effectuate the central purpose of the code. So even to the extent that these are two equally reasonable ways to look at this, the general rule would say that the narrow interpretation should control to effectuate one of the central purposes of the code. One thing I would like to bring up about the question of the Supreme Court stating that nos quatora socis is not appropriate when there's only three words. I did see that every member of this panel has written extensively on this canon. I think that what they're referring to is the Graham County case from the Supreme Court, which was cited by this court in US v. Franklin. Now, in Graham County, what the Supreme Court said was that the three words under the statute they were analyzing, which were congressional, administrative, and government accounting offices, they said that those three words had disparate meanings. And so the canon was not particularly illuminating there. I think it's a little bit of a stretch to say they said in that case that it is never appropriate. I don't believe that's what they said. And in fact, in 2015, the Supreme Court in Yates v. US, when they were examining the record, document, tangible object. And they did apply the canon of nos quatora socis. So I don't think the Supreme Court, I think like all statutory construction, this needs to be done with common sense, with resort to rules. You don't analyze words in isolation. Sometimes the canon's appropriate. Perhaps sometimes it's not. I think this court held that in this case, it was appropriate because benefits, scholarship, and stipend all do sort of fall under this umbrella of a grant. And so it is useful there to employ the canon. And so I just wanted to make that point that although the Supreme Court has cautioned sometimes not appropriate, I think the bankruptcy court was appropriate, I'm sorry, was correct in applying it in this context. Let me ask you a question that's not related to the statutory interpretation really, but just to make sure I'm clear on what the factual situation is here. At some point, you amended your Chapter 13 plan. Is that right? I was not the counsel in that matter. Well, it was done. Yes, correct. Well, is there anything in the record that says why it was done? So what happened was— I mean, specifically, I'm talking about related to the student loan language. Yes, the trustee did object to the original plan on the grounds that it didn't make provision for the non-dischargeable student loan singular. Yes. The amended plan said the student loans will be treated as a Class 4 claim or deferred until after the plan, which as we discussed at the lower level in the bankruptcy court noted could have simply referred to a federal student loan that is non-dischargeable. And we're not disputing that. So there are these two different types of student loans at issue in this case. We don't think the plain language of the plan, as the court said— So by making that amendment, then you were responding to the question that the court raised? That the trustee raised, correct. Excuse me, that the trustee raised. But does this response really answer the question because of the or? It's either— I think that's right. As unsecured Class 4 claims or deferred, which is like a non-answer to me. I believe that's correct. And again, you know, this was on motion to dismiss. You know, I think that it might have been wise to go to discovery. They could have deposed the trustee, could have sort of figured some of these things out. Navient decided to proceed to motion to dismiss on what was on the record and then appeal it. And I think the court found, and we argued based on that language, that is not a finding of dischargeability or non-dischargeability. Just isn't instructive on that point. I just thought that one of the questions that— one of the reasons or rationales for supporting the res judicata argument of the opponent was that the court accepted its objection. I mean, is that your understanding based upon the record of what happened here? Well, I mean, you know, in the record on appeal, they did pull the transcripts from those hearings and nothing was said about that issue. So we just don't know. There were a number of objections that were made. The amended—and the hearing, they didn't talk about it at all. The amended plan was filed. It was confirmed. As the bankruptcy court held below, you couldn't have had—to file an adversary proceeding on any debt that may or may not be dischargeable and still get the plan confirmed in time, to do that would completely upend the entire bankruptcy process. You need to get the plan confirmed, she said generally, I believe within 60 days of the 341 meeting. And so it's just not—it's not practical to adjudicate dischargeability issues within that narrow window. And so, true, Espinoza says you can—if you write down discharge for undue hardship, well, that's a sanctionable conduct apparently on the part of an attorney. It did stand in that case because it was a legal error but not jurisdictional. But I think that it's a little bit different of a question also. Did you state the loan was dischargeable when you shouldn't? And is there just no finding one way or the other? And when there's no finding one way or the other, then Rule 4007 says a determination of discharge may be brought at any time. And so the court, I think, relied partially on that to say, it's not too late to do this. The Bankruptcy Code rules say you can do this at any time and there was no finding of dischargeability or non-dischargeability in the plan. I—well, then I take it what you're saying is at worst, the record is solid. There is no indication that this objection was accepted, right, by the bankruptcy court? I guess I'm a little bit unclear what you mean by accepted. Well, approved. I mean, I think part of the whole issue of the res judicata issue is trustee objects and says that you need to include this as a non-dischargeable asset. Court says, yes, that's right. It needs to be included. That's what I'm saying. I understand, Your Honor. And so in that context, we'll recall again the language of the non-dischargeable student loan. And they amended the plan, the plan. So I think that to the extent there was no provision in there about the student loans, yes, that was an accepted point. But that did not encompass the student loan that you are here talking about now. That's correct. Right. Okay. Because there were two kinds of student loans or loans out there. The debtors do have non-dischargeable student loans, which are the federally insured loans. Thank you. You're welcome. Thank you, counsel. Your Honor, to the latter point, appendix page 77 is the bankruptcy court's order affirming the trustee's objection. Isn't there a local rule that says that if there's an amendment to the plan, that all standing objections are declared moot? I'm looking at a minute order from the bankruptcy court that says exactly that. I believe it says that two things. I think it says that the trustee's objection is granted and following up with the point Your Honor just made. But I don't frankly have it in front of me. Okay. If I could make just a few quick points. With respect to the argument about or the question about other authority on this point, there are a number of cases going both ways. The only circuit court opinion to address this is the DeSormes case out of the Second Circuit, and it goes our way. So I wanted to point that out. I also wanted to point out on the issue of obligation to repay. We cited in our brief, there are no fewer than 15 other examples we found in which Congress has used in other contexts, specifically the term obligation to repay in reference to loans. With respect to the redundancy argument. You're out of time, sir. Thank you, Your Honor. Thank you both for your arguments this morning. The case is submitted. Our next case for our